970 So.2d 186 (2007)
2004 CHEVROLET PICKUP, Appellant
v.
STATE of Mississippi and North Mississippi Narcotics Unit, Appellees.
No. 2006-CA-01104-COA.
Court of Appeals of Mississippi.
August 21, 2007.
Rehearing Denied December 4, 2007.
*187 Thomas M. Brahan, attorney for appellant.
J. Trent Kelly, Tupelo, attorney for appellees.
Before MYERS, P.J., ISHEE and CARLTON, JJ.
ISHEE, J., for the Court.
¶ 1. On May 22, 2006, the Chickasaw County Circuit Court found that the State of Mississippi and the North Mississippi Narcotics Unit (NMNU) proved by a preponderance of the evidence that (1) Walter Hampton was a seller of illegal drugs, (2) a 2004 Chevrolet Avalanche was owned by Hampton, Antonio Eddie being but a straw man, and (3) the vehicle was purchased with funds from the proceeds of drug transactions. The court then ordered the vehicle forfeited to the NMNU. Aggrieved, Antonio Eddie appeals. He claims the State and the NMNU failed to prove the following by a preponderance of the evidence:
I. That Antonio Eddie was not the true owner of the 2004 Chevrolet Avalanche
II. That the 2004 Chevrolet Avalanche was purchased with proceeds of drug sales
III. That the 2004 Chevrolet Avalanche was used or intended to be used to transport or otherwise facilitate an illegal drug transaction with the knowledge or consent of the true owner, Antonio Eddie
Finding no error, we affirm.

FACTS
¶ 2. According to testimony put on by the State, the Bureau of Narcotics had been investigating Walter Hampton since 2001. On November 20, 2003, police stopped Walter Hampton and Dewayne Robinson driving the 2004 Chevrolet Avalanche that is the subject of this litigation. Upon searching the truck, agents Brian Ely and Brand Huffman, of the NMNU, discovered marijuana and cocaine residue in the pocket of the door. Based upon this search, NMNU agents obtained a search warrant for the trailer in which Hampton lived. During the execution of that warrant, they found marijuana, some scales, and an IOU list.
¶ 3. The following year, authorities stopped Frederick Randle as he was leaving Hampton's residence. They found marijuana in Randle's truck, and this led to a second search of Hampton's trailer. During that search, they found marijuana that had been thrown into the yard and marijuana residue on a counter where it appeared people had been cutting the drugs. It was after this search that authorities seized the Avalanche.
¶ 4. Antonio Eddie testified that he first observed the truck during a late night delivery for Wal-Mart, for whom he worked as a truck driver at the time of the trial. He then alleged that he contacted Hampton and asked him to look at the truck for him and see what trade-in value the dealership would give him for a Chevrolet Yukon. Conveniently, Hampton was going to the dealership the next day to look at a Chevrolet TrailBlazer, but his girlfriend was turned down for credit. There was conflicting testimony from the salesman, Reginald Henry, who first stated *188 that Hampton paid the initial cash deposit at the dealership and that Eddie did not ask any questions and had nothing to do with the purchase of the truck until he signed the papers later that day. However, he later said that Eddie paid the money at a meeting at Hampton's grandmother's. There was also a check written on Eddie's account, but it was never cashed. The balance of the purchase price for the Avalanche, after deducting the Yukon trade-in and the initial deposit, was paid in cash over the next few weeks.
¶ 5. The truck was customized with Gucci leather seats, custom rims and tires, an upgraded stereo system, and a custom grill and tag for the front. Eddie testified that he payed for all of this and that he never received any money from Hampton for the customization of the truck. The individuals who performed the customization, however, testified that they never dealt with Eddie. It was either Hampton or Marcus Thompson who came to them to arrange for the customization or to check on the vehicle.
¶ 6. Winford Terry, Jr., owner of Terry's Custom Upholstery, testified that he installed the Gucci leather interior in the Avalanche. He testified that Hampton brought the Avalanche to his shop and paid him in cash for the upholstery. While he said Hampton came to his shop a number of times, he never saw Eddie until after police had seized the truck.
¶ 7. Brad Herndon, owner of DeCa Auto Sound, testified he installed a stereo system in the Avalanche for Walter Hampton. He estimated that Hampton paid between one and two thousand dollars and that he also brought in some additional equipment to install that was not purchased at Herndon's business. During cross-examination, he stated that it would not be unusual for a third party to bring in a vehicle, but he never received any money from anyone other than Hampton and never had any indication that it was not Hampton's truck.
¶ 8. Lastly, Adam Bates, part owner of Bates Tire Center, testified that the man who came to purchase the rims wanted the best spinning wheels. These were $8,000 rims, of which Bates had only sold one other set to a professional basketball player. Marcus Thompson testified that he took the truck to the shop to get new rims for Eddie. He said Eddie contacted him and showed him some rims that he had found on the Internet. When the work was done, however, Marcus said he took the truck to Hampton. He said he did that because Eddie told him to.
¶ 9. The State also presented the testimony of Officer Jamal Thompson, of the Aberdeen Police Department. Officer Thompson testified that Marcus Thompson had indeed been charged with a felony even though he had denied it during direct examination. On October 30, 2005, Marcus was arrested and charged with possession of crack cocaine with intent. This was at the same time that Theron Hampton, the brother of Walter, gave a statement to Officer Thompson concerning Eddie. Theron made a signed statement that he was the actual owner of a brown Crown Victoria titled in Eddie's name. According to the statement, Theron's bad credit prevented him from purchasing the car, so he got Eddie to title the car in his name.
¶ 10. On cross-examination, Eddie testified that, in addition to the Avalanche, he also bought a 2003 Yukon in March 2003. He said he would use this vehicle to travel to see his brother play football. When he was questioned as to why Hampton's address was on the paperwork for the Avalanche, he could not explain it.
¶ 11. Ultimately, the judge found that Hampton was the true owner of the Avalanche and that Eddie acted only a straw man. He also found that the truck had *189 been purchased with the proceeds of drug sales, and he ordered it forfeited to the NMNU.

STANDARD OF REVIEW
¶ 12. "Findings of fact are given deferential treatment and are subject to the manifest error/substantial evidence standard." Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 15) (Miss. 2002).

ISSUES AND ANALYSIS
I. Whether Antonio Eddie was the true owner of the Avalanche
II. Whether the Avalanche was purchased from the proceeds of drug sales
¶ 13. We will discuss these issues together as they are interrelated.
¶ 14. Any property used, or intended to be used, to transport or facilitate the transportation of controlled substances and any proceeds from the exchange of controlled substances are subject to forfeiture. Miss.Code Ann. § 41-29-153(a)(4), (7) (Rev.2005). A property owner has a right to file an answer to a petition for forfeiture, and, if he does so, it is then the burden of the petitioner to prove by a preponderance of the evidence that the property is subject to forfeiture. Miss.Code Ann. § 41-29-179(2) (Rev.2005). The penal nature of forfeiture statutes requires that they be strictly construed. 335 W. Ash St. v. City of Jackson, 664 So.2d 194, 199 (Miss.1995). On the other hand, "failure to look beyond bare legal title would foster manipulation of nominal ownership to frustrate [the intent of the forfeiture statutes]." One Ford Mustang Convertible v. State ex rel. Clay County Sheriff's Dep't, 676 So.2d 905, 907 (Miss.1996) (quoting United States v. 526 Liscum Drive, 866 F.2d 213, 217 (6th Cir.1989)).
¶ 15. Eddie claims that he is the true owner of the Avalanche, but the NMNU contends that Eddie was merely a straw man and that Hampton was the true owner. Since the trial court found by a preponderance of the evidence that Eddie was a straw man and that the vehicle was purchased with proceeds from drug sales by its true owner, Hampton, we must give deference to the court and ask only whether its findings of fact were manifestly in error. Russell, 826 So.2d at 721(¶ 15).
¶ 16. A number of facts support the court's finding that the NMNU proved by a preponderance of the evidence that Hampton was the true owner and that the Avalanche was purchased from the proceeds of drug sales. Hampton went to the dealership to check out the truck and paid the initial cash for it. He paid for the vehicle and its extensive customization in cash. A number of witnesses testified that they saw Hampton driving the Avalanche all the time and that it was usually parked at his residence. In the glove compartment, the police found a number of receipts that indicated that Hampton had been paying for the maintenance on the truck. The signed statement by Walter Hampton's brother, Theron, also supports the NMNU's position. The statement indicates that Eddie also put his name on the title of Theron's car because Theron had bad credit.
¶ 17. Concerning whether the Avalanche was the proceeds of drug sales, the NMNU had been investigating Hampton for drug trafficking since 2001. In 2003, the police arrested him following a traffic stop, during which marijuana and cocaine residue were discovered in the door of the Avalanche. After the stop, the police searched Hampton's residence and discovered marijuana, scales, and an IOU list. During a second search of Hampton's home, conducted after authorities stopped *190 an individual leaving with marijuana, the police found more drugs and seized the truck and other property. At the time of trial, Hampton had pled guilty to a charge of possession of a controlled substance with intent to distribute and had another such charge pending against him. All of this must also be considered along with the fact that the truck and all of its accessories were paid for with cash.
¶ 18. Based on the evidence presented, we find that the trial court did not commit manifest error in finding that Hampton was the true owner of the Avalanche, that Eddie was merely a straw man, and that the truck was purchased with the proceeds of drug sales. Therefore, it was not error to order the Avalanche to be forfeited to the NMNU. These issues are without merit.
III. Whether the Avalanche was used or intended to be used to facilitate drug transactions with the knowledge or consent of Antonio Eddie
¶ 19. The trial court found that Hampton purchased the Avalanche from the proceeds of drug sales, not that it was used to facilitate drug transactions. Since we find that ruling was not manifest error, we do not need to address this assignment of error. This issue is moot.
¶ 20. THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.